[Civ. No. 6723.   Third Dist.   Jan. 16, 1942.]

CHAPMAN CHINCHILLA SALES COMPANY (a Corporation), Appellant, v. CHARLES G. JOHNSON, as State Treasurer, Respondent.

W. Wellington Farrow, Snow & Forster and Richard H. Forster for Appellant.

Earl Warren, Attorney General, and H. H. Linney and Adrian A. Kragen, Deputies Attorney General, for Respondent.

TUTTLE, J.—This action was brought to recover the sum of $768 paid by plaintiff as a retail sales tax. Judgment went for defendant, and plaintiff now appeals therefrom.

The facts are undisputed, and the salient parts thereof appear in the following portion of the findings:

"Plaintiff was and is a seller of small fur-bearing animals known as Chinchillas, and is engaged in the business of selling at retail, in California, said Chinchillas; that plaintiff sells, in California, said Chinchillas to purchasers who purchase them for the sole purpose of breeding them and multiplying their progeny."

It was also stipulated that the only use to which said animals could be put was for bearing fur and reproducing their kind, and that during the month of June, 1939, for which period the tax was levied, the sales made by plaintiff were of live Chinchillas to breeders for breeding purposes only.

The question presented arises out of a construction of the Retail Sales Tax Act, section 2c, Stats. 1933, page 2599; Deering's General Laws, Act 8493, which provides in part as follows:

"A 'retail sale' or 'sale at retail' means a sale to a consumer or to any person for any purpose other than for resale in the form of tangible personal property. . . ."

It is the contention of appellant that the sale here does not come within the provisions of said act, for the reason that a sale of such animals was for breeding purposes only; hence, there was a sale for the purpose of resale, and such transactions were not subject to the tax. In support of its position, appellant insists that the retail sale occurs when the *pelts* of the animals and the *pelts* of the offspring are sold in the form of a fur coat. They urge that "with reference to

the sale of animals for breeding purposes only, it is clear that the true value of such animals is contained in the sperm and ova in the animal at the time of sale, and that the purchase of the animal with the sperm and ova in them is therefore a purchase for the purpose of resale.'' Respondent has the following answer to the foregoing contention:

''Appellant's argument that a sale of Chinchillas for breeding purposes is a sale for resale is on the theory that the Chinchillas are not the thing sold by appellant but that the sperm and ova of the animal are sold and this eventually results in the birth of a Chinchilla which is sold. The weakness of appellant's theory is apparent when we consider that without the live animals there cannot be any reproduction. The reproduction organs cannot be separated from the animals and in fact these organs are not resold but their product is resold, not once, but many times. The value of the animals is in part due to their ability to beget offspring frequently. If we follow appellant's theory we would have to find that the reproductive organs entirely left the parents and became part of the offspring.''

We think the latter view is the correct one. The animals are purchased for a use, to-wit, the production of Chinchillas, and not for resale. The fact that they have within them the power to create other Chinchillas does not make the sale of the original Chinchillas a sale for resale. The question involved is the purpose of such a sale. It is not contended that the purchaser ever intends to sell the identical animal to others. The rather ingenious argument of appellant that a sale of the offspring is a resale of a *part* of the parents, conceding that it is based upon a scientific truth, cannot prevail over the admitted fact that a resale of the identical animals was not contemplated by the purchaser.

The case of *Kirk* v. *Johnson*, 37 Cal. App. (2d) 224 [99 P. (2d) 279], while not directly in point, tends to bear out the contention of respondent upon the controlling factor of the ''purpose'' of the sale, as that word is used in the act. We there said:

''We are of the opinion dairy cows which are bought for the primary purpose of first using them in a dairy business to produce milk for the market during the period of their usefulness for that purpose, which continues for an average of over two years' time, may not be said to have been purchased for 'resale in the form of tangible personal property,'

merely because the owner intends to market them as beef, when their usefulness for the original purpose for which they were acquired has ceased. Under the circumstances of this case the dairy cattle were not bought 'for resale.' It is apparent that the chief purpose for which they were purchased was not for resale, but they were to be used for the benefit of the owners in conducting their dairy businesses as long as they were profitable for that purpose. The purchases of cattle in this case do not come within the exception of the Retail Sales Tax Act found in section 2(c) thereof, and the sales are therefore not exempt from taxes on that account.

"Nor are the sales of cattle exempt from taxation under the provisions of section 5(e) of the act, merely because they produce milk or for the reason that they may finally be converted into beef, which by-products are excepted from taxable sales. It is the sale of milk and not the source from which it is produced that is exempt; just as it is the sale of 'eggs and egg products' and not the hens that lay the eggs which are exempt from taxes. The exemption clause does not mention cattle or chickens. We must assume, from the failure to do so, that the legislature intended to exempt from taxation only the by-products of cattle and poultry, and not the live animals or birds."

The sales come within the definition of the act, and the judgment is therefore affirmed.

Thompson, Acting P. J., and Steel, J. *pro tem.*, concurred.